# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAIKELLYS LUSEIDY REYES SOLANO,<br><br>Petitioner,<br><br>v.<br><br>TIMOTHY S. ROBBINS, et al.,[1]<br><br>Respondents. | Case No. 1:25-cv-01823-EPG-HC<br><br>ORDER GRANTING PRELIMINARY INJUNCTION[2] (ECF No. 2) AND DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER<br><br>ORDER VACATING DECEMBER 12, 2025 MINUTE ORDER (ECF No. 4)<br><br>ORDER REGARDING FURTHER BRIEFING |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the

---

[1] Respondents move to strike and dismiss all unlawfully named officials. (ECF No. 9 at 1 n.1.) "[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." Doe v. Garland, 109 F.4th 1188, 1199 (9th Cir. 2024). Although Doe held that "*Padilla* set forth a clear rule requiring core habeas petitioners challenging their present physical confinement to name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition," 109 F.4th at 1197, Doe did not necessarily preclude naming more than one respondent so long as the immediate custodian is named. Given that Petitioner has named her immediate custodian as a Respondent, the Court declines to dismiss all the remaining named Respondents.

[2] The Court converts Petitioner's motion for temporary restraining order into a motion for preliminary injunction. Respondents had notice, opportunity to respond, and the ability to be heard. There is no benefit in additional briefing, and the standard is the same. As such, given the nature of the relief granted by this order and so as to appropriately permit Respondents the ability to appeal should they choose to do so, the Court converts this to a motion for preliminary injunction. See Bennett v. Medtronic, Inc., 285 F.3d 801, 804 (9th Cir. 2002) ("Ordinarily, temporary restraining orders, in contrast to preliminary injunctions, are not appealable . . . .").

1

jurisdiction of a United States magistrate judge. (ECF Nos. 6–8.) For the reasons stated herein, the Court grants a preliminary injunction and orders Petitioner's immediate release.

## I.

## BACKGROUND

Petitioner, a citizen of Venezuela, fled Venezuela on her own to seek asylum and related protections from persecution and torture in the United States. Petitioner's mother and infant siblings were already residing in the United States after fleeing Venezuela for the same reason as Petitioner. (ECF No. 1 at 6.[3]) On October 11, 2024, Petitioner arrived in the United States, and that same day, Respondents arrested and detained Petitioner and processed her as an expedited removal. (Id.; ECF No. 9-1 at 2, 15.)

On October 17, 2024, Petitioner underwent a credible fear interview with U.S. Citizenship and Immigration Services ("USCIS") asylum officers. (ECF No. 1 at 6; ECF No. 2-2 at 20–44.) On October 21, 2024, the asylum officers made a negative finding regarding the interview, and Petitioner requested a review of the decision by an immigration judge ("IJ"). (ECF No. 1 at 6; ECF No. 2-2 at 49–52.) On October 23, 2024, an IJ vacated USCIS's negative credible fear determination. (ECF No. 1 at 6; ECF No. 2-2 at 55; ECF No. 9-1 at 2.)

On October 31, 2024, the Department of Homeland Security ("DHS") issued a notice to appear ("NTA") "[i]n removal proceedings under section 240 of the Immigration and Nationality Act" ("INA"), charging Petitioner with removability under sections 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i) of the INA. The NTA also stated that the section 235(b)(1) expedited removal order was being vacated pursuant to 8 C.F.R. §208.30. (ECF No. 2-2 at 57–59; ECF No. 9-1 at 5–7.) On November 9, 2024, Petitioner was released from custody on an order of release on recognizance. As a condition of Petitioner's release, she was required to enroll and successfully participate in the Alternatives to Detention ("ATD") program. (ECF No. 9-1 at 9–12.) U.S. Immigration and Customs Enforcement ("ICE") officials also placed an ankle monitor on Petitioner upon her exit from the detention facility in Texas. (ECF No. 1 at 6.)

---

[3] Page numbers refer to the ECF pagination stamped at the top of the page.

1    Following her release, in early November 2024, Petitioner moved in with her mother and
2 infant siblings in California. (ECF No. 1 at 6.) On July 21, 2025, Petitioner was two hours late
3 with submitting her picture through the Intensive Supervision Appearance Program ("ISAP")
4 mobile phone application ("ISAP app") because at the scheduled time to take the picture,
5 Petitioner had accompanied her mother to the hospital for her mother's scheduled breast cancer
6 treatment and had been discussing her mother's treatment with the oncologist. (Id. at 7.)

7    The following morning, on July 22, 2025, Petitioner received a notification through the
8 ISAP app instructing her to appear at the ICE field office in San Francisco on July 31, 2025. On
9 July 31, 2025, Petitioner appeared at the ICE field office in San Francisco. When questioned
10 about why she had been two hours late in sending her picture, Petitioner explained to the ICE
11 officer that at the scheduled time she was with her mother at the hospital due for her mother's
12 cancer treatment session. The officer told Petitioner she was sympathetic to her situation and that
13 Petitioner had nothing to worry about, placed an ankle monitor on Petitioner,[4] and instructed
14 Petitioner to appear at the ICE field office on October 2, 2025. (ECF No. 1 at 8.)

15    Petitioner alleges that from July 22, 2025 until October 2, 2025, she continued sending all
16 her pictures in a timely manner. On October 2, 2025, Petitioner appeared at the ICE San
17 Francisco field office for her scheduled check-in, but she was promptly detained by ICE officers.
18 Petitioner asked for the specific facts and proof supporting the allegation, but the only
19 information the ICE officer provided was that she had missed taking a picture on one occasion.
20 Petitioner tried to explain why she had missed taking a picture for two hours on July 21, 2025,
21 but the ICE officers proceeded with arresting her. On the same day, Petitioner was transferred to
22 the California City Detention Center, in California City, California. Prior to Petitioner's re-
23 detention, she did not receive written notice of the reason for her re-detention or hearing before a
24 neutral decisionmaker to determine if her re-detention was justified. (ECF No. 1 at 8–9.)

25    On December 11, 2025, Petitioner filed a petition for writ of habeas corpus and a motion
26 for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) On December 12, 2025, the Court

---

[4] On December 4, 2024, Petitioner appeared as instructed at the ISAP office in San Francisco. At that visit, ICE officers had removed her ankle monitor. (ECF No. 1 at 7.)

3

issued a minute order prohibiting Respondents from removing Petitioner from the United States or transferring Petitioner out of this District unless and until the Court orders otherwise. (ECF No. 4.) On December 17, 2025, Respondents filed an opposition to the motion for TRO and the habeas petition. (ECF No. 9 at 2.) On December 18, 2025, Petitioner filed a reply in support of her motion for TRO. (ECF No. 10.)

## II.

## DISCUSSION

### A. Preliminary Injunction Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Glossip v. Gross, 576 U.S. 863, 876 (2015) (internal quotation marks omitted) (quoting Winter, 555 U.S. at 20). The Ninth Circuit "has adopted the 'serious questions' test—a 'sliding scale' variant of the *Winter* test—under which a party is entitled to a preliminary injunction if it demonstrates":

> (1) "serious questions going to the merits," (2) "a likelihood of irreparable injury," (3) "a balance of hardships that tips sharply towards the plaintiff," and (4) "the injunction is in the public interest." *Id.* at 1135.[5] As to the first factor, the serious questions standard is "a lesser showing than likelihood of success on the merits." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).

Flathead-Lolo-Bitterroot Citizen Task Force v. Montana, 98 F.4th 1180, 1190 (9th Cir. 2024) (footnote added).

### B. Likelihood of Succeeding on the Merits

Petitioner contends that "[d]ue process requires Respondents to afford Petitioner a hearing before a neutral decisionmaker where ICE is required to justify re-detention *before* it occurs." (ECF No. 2 at 7.) Petitioner notes that "[i]n recent months, as DHS has detained many similarly-situated noncitizens, several courts—including District Courts in California—have held

---

[5] Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

1  the same and ordered the immediate release of noncitizens who had been re-detained by DHS
2  without a pre-deprivation hearing." (ECF No. 2 at 7 (collecting cases).)

3  Respondents state that the "issue here is whether Petitioner, an applicant for admission to
4  the United States under 8 U.S.C. § 1225(a), who was initially released on her own recognizance,
5  can be re-detained under § 1225(b)(2) without a pre-re-detention hearing. The *statute* confirms
6  the answer is yes[.]" (ECF No. 9 at 6 (emphasis added) (citing 8 U.S.C. § 1225(b)(2)(A)).)
7  However, neither the petition nor the motion for TRO raises a statutory claim but rather a
8  constitutional due process claim.

9  Respondents argue that "applicants for admission lack any constitutional due process
10 rights *with respect to admission* aside from the rights provided by statute," and thus, "Petitioner's
11 due process rights are limited to whatever statutory rights Congress provides." (ECF No. 13 at 10
12 (emphasis added).) In support of this position, Respondents rely on Shaughnessy v. United States
13 ex rel. Mezei, 345 U.S. 206, 212 (1953), United States ex rel. Knauff v. Shaughnessy, 338 U.S.
14 537, 543 (1950), and DHS v. Thuraissigiam, 591 U.S. 103, 139-40 (2020). These cases
15 addressed due process rights *with respect to admission*, as noted by Respondents. Here, however,
16 Petitioner is not raising claims regarding the admission process. See Padilla v. U.S. Immigr. &
17 Customs Enf't, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023) ("Defendants ask the Court to
18 extract from Thuraissigiam a broad rule that any inadmissible noncitizen possesses only those
19 due process rights afforded to them by statute, regardless of the nature of their status or the relief
20 they seek. But such a conclusion is untethered to the claim in Thuraissigiam and the Court's
21 reasoning. Thuraissigiam's discussion of due process is necessarily constrained to challenges to
22 admissibility to the United States."), appeal filed, No. 24-2801 (9th Cir. argued May 21, 2025);
23 J.E.H.G. v. Chesnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *10 n.10 (E.D. Cal.
24 Dec. 9, 2025) (rejecting similar government argument); Carmen G.C. v. Robbins, No. 1:25-cv-
25 01648-KES-HBK (HC), 2025 WL 3521304, at *3–4 (E.D. Cal. Dec. 8, 2025) (rejecting similar
26 government argument).

27  8 U.S.C. § 1226(a) "is the default detention statute for noncitizens in removal
28 proceedings." Avilez, 69 F.4th at 529. Detention under § 1226(a) "is discretionary" and

"provides for release on bond or conditional parole." Avilez, 69 F.4th at 529. The Supreme Court has described 8 U.S.C. § 1225 as follows:

> Under § 302, 110 Stat. 3009–579, 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).
>
> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. See § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. See § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). See §§ 1225(b)(2)(A), (B).
>
> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).
>
> Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid.*

Jennings v. Rodriguez, 583 U.S. 281, 287–88 (2018).

///

1    Petitioner's November 9, 2024 Order of Release on Recognizance, ICE Form I–220A,
2 states: "In accordance with section 236 of the Immigration and Nationality Act and the
3 applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on
4 your own recognizance provided you comply with the following conditions[.]" (ECF No. 9-1 at
5 9.) Section 236 of the INA corresponds to 8 U.S.C. § 1226. The Ninth Circuit has found with
6 respect to an "INS Form I–220A 'Order of Release on Recognizance'" that "the INS used the
7 phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."
8 Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1112, 1115 (9th Cir. 2007) (noting that "[n]one of
9 the forms issued to Ortega–Cervantes makes any reference whatsoever to 'parole into the United
10 States' under § 1182(d)(5)(A), and immigration officials did not issue Ortega Cervantes an I–94
11 card, which is typically given to § 1182(d)(5)(A) parolees").

> Until this year, DHS has applied section 1226(a) and its regime of discretionary release and review of detention "to the vast majority of noncitizens allegedly in this country without valid documentation"—a practice codified by regulation. *Id.* As early as 1997, in the regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the Immigration and Naturalization Service and the Executive Office for Immigration Review stated that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens, 62 Fed. Reg. at 10323. The government's briefing in this case acknowledges that its position historically was that section 1226(a) was "an available detention authority for aliens [present without being admitted or paroled] placed in full removal proceedings under § 1229a." (Dkt. No. 16 ("Opp.") at 12.)
>
> However, the government now disavows its prior position in light of subsequent "legal developments," including its 2025 designation "restor[ing] the scope of expedited removal to the fullest extent authorized by Congress," 90 Fed. Reg. at 8139. (Opp. at 12.) It contends that section 1225 is "the sole applicable detention authority for *all* applicants for admission" and asserts that all applicants for admission are "subject to the mandatory detention framework" of section 1225(b). (Opp. at 12, 14.)

26 Valencia Zapata v. Kaiser, No. 25-CV-07492-RFL, 2025 WL 2741654, at *4 (N.D. Cal. Sept.
27 26, 2025), appeal filed, No. 25-7472 (9th Cir. filed Nov. 26, 2025).
28 ///

1    "[T]he government cannot switch tracks and subject Petitioners to mandatory detention
2 under section 1225(b)(2) when the government has instead placed Petitioners in removal
3 proceedings under section 1229a and released them on their own recognizance under section
4 1226(a)." Valencia Zapata, 2025 WL 2741654, at *9. See Souza v. Robbins, No. 1:25-cv-01597-
5 DJC-JDP, 2025 WL 3263897, at *2 (E.D. Cal. Nov. 23, 2025) (finding facts presented indicated
6 petitioner was released under § 1226(a) where petitioner received § 1225(b)(1) order of
7 expedited removal, was subsequently released from detention via order of release on
8 recognizance stating release was pursuant to § 1226, received NTA stating she was no longer
9 subject to expedited removal as expedited removal order was vacated); Orejuela Gutierrez v.
10 Chestnut, No. 1:25-cv-01515-DAD-AC (HC), 2025 WL 3514495, at *5 (E.D. Cal. Dec. 8, 2025)
11 ("As numerous courts have observed, the initial decision to pursue petitioner's detention under §
12 1226(a) precludes the government from later 'switch[ing] tracks' to subject him to mandatory
13 detention under § 1225(b)(2)." (alteration in original) (quoting Salcedo Aceros v. Kaiser, No. 25-
14 cv-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025))).

15    "Here in the Eastern District of California, recent decisions have largely rejected the
16 government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for
17 admission.'" Valencia v. Chestnut, No. 1:25-cv-01550 WBS JDP, 2025 WL 3205133, at *2
18 (E.D. Cal. Nov. 17, 2025) (citing Lepe v. Andrews, No. 1:25-cv-01163-KES-SKO (HC), --- F.
19 Supp. 3d ----, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); Rodriguez v. Kaiser, No. 1:25-cv-
20 01111-KES-SAB (HC), 2025 WL 2855193 (E.D. Cal. Oct. 8, 2025); Ortiz Donis v. Chestnut,
21 No. 1:25-cv-01228 JLT SAB, 2025 WL 2879514 (E.D. Cal. Oct. 9, 2025); Menjivar Sanchez v.
22 Wofford, No. 1:25-cv-01187-SKO (HC), 2025 WL 2959274 (E.D. Cal. Oct. 17, 2025)). Contra
23 Valencia, 2025 WL 3205133, at *2 (declining to follow said cases, finding "petitioner is unlikely
24 to prevail on his statutory arguments," and denying temporary restraining order); Alonzo v.
25 Noem, No. 1:25-cv-01519 WBS SCR, 2025 WL 3208284, at *3, 5 (E.D. Cal. Nov. 17, 2025)
26 (finding that "[n]otwithstanding the majority view," petitioner failed to make "a sufficient
27 showing of the likelihood of success on his statutory claim" yet noting "[t]his finding should not
28 be understood an affirmative endorsement of the view that respondents' interpretation of

§ 1225(b)(2)(A) -- which is in line with the expansive understanding of mandatory detention applicability -- is correct" but rather "only that petitioner has failed to show a likelihood of success on it").

Additionally, "[o]ther district courts have also reached the result that Section 1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens already residing in the United States." Valencia, 2025 WL 3205133, at *2 (citing Garcia v. Noem, No. 25-cv-02180-DMS-MMP, --- F.Supp.3d ----, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Martinez v. Noem, No. EP-25-CV-430 KC, 2025 WL 2965859 (W.D. Tex. Oct. 21, 2025) (acceptance of DHS's new interpretation represents "a minority view"); Buenrostro-Mendez v. Bondi, No. CV H-25-3726, 2025 WL 2886346 (S.D. Tex. Oct. 7, 2025)). Contra Chavez v. Noem, No. 3:25-cv-02325-CAB-SBC, --- F.Supp.3d ----, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); Mejia Olalde v. Noem, No. 1:25-cv-001568-JMD, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025).

Moreover, the United States District Court for the Northern District of California recently provisionally certified the following class and subclass:

> *Class:* All noncitizens in the jurisdiction of the San Francisco ICE Field Office who (1) entered or will enter the United States without inspection; (2) have been or will be charged with inadmissibility under 8 U.S.C. § 1182 and have been or will be released from DHS custody; and who (3) are in removal proceedings under 8 U.S.C. § 1229a, including any § 1229a proceedings that have been dismissed where the dismissal is not administratively final; and (4) are not subject to detention under 8 U.S.C. § 1226(c)."
>
> *Subclass:* All members of the Class whose release from DHS custody was or will be on bond, conditional parole, or their own recognizance under 8 U.S.C. § 1226(a) and/or 8 C.F.R. § 236.1(c)(8).

Garro Pinchi v. Noem, No. 25-CV-05632-PCP, --- F. Supp. 3d ----, 2025 WL 3691938, at *12 (N.D. Cal. Dec. 19, 2025).[6] The district court granted the plaintiffs' motion to "motion to stay DHS's re-detention policy pending final resolution of their APA claims" and "postpone[d] the effective date of the re-detention policy within ICE's San Francisco area of responsibility until the entry of a final judgment in this action." Garro Pinchi, 2025 WL 3691938, at *34.

---

[6] It appears that Petitioner may be a member of the Garro Pinchi class and subclass.

9

1   This Court will follow the majority approach in finding that "Respondents' proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *5 (E.D. Cal. Nov. 12, 2025). See Paz Aguilera v. Albarran, No. 1:25-cv-01619 JLT SAB, 2025 WL 3485016, at *9 (E.D. Cal. Dec. 4, 2025) ("acknowledg[ing] that two recent decisions in this district accepted Respondents' new interpretation of § 1225(b)(2)," but distinguishing those decisions because "unlike Petitioner, the petitioners in *Valencia* and *Alonzo* had never been encountered, let alone processed, by immigration officials, and had not been released on recognizance pending completion of Section 240 removal proceedings").[7]

"We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted).

   1. Liberty Interest

Petitioner asserts that she "has an exceptionally strong interest in freedom from physical confinement." (ECF No. 2 at 8.) Petitioner notes that courts have held "that noncitizens have a strong liberty interest in cases involving re-detention" and argues that a "person re-detained after

---

[7] Respondents note:
> The 8 U.S.C. §§ 1225 and 1226 issue is arising in many immigration cases, including *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025), which is on an expedited appeal to the Ninth Circuit and appears to be set for argument on the February 2026 calendar (Ninth Circuit Docket No. 25-6842). The statutory analysis in that case may be dispositive of issues herein. The Court may wish to hold this matter in abeyance pending resolution of that Ninth Circuit appeal.

(ECF No. 9 at 2.) In light of the weight of authority rejecting the government's argument and the provisional certification of the class in Garro Pinchi and the "postpone[ment of] the effective date of the re-detention policy within ICE's San Francisco area of responsibility until the entry of a final judgment in [that] action," 2025 WL 3691938, at *34, the Court declines to hold this matter in abeyance pending resolution of the appeal of Rodriguez Vazquez v. Bostock.

a prior release from ICE custody is 'undoubtedly deprive[d] . . . of an established interest in his liberty.'" (ECF No. 2 at 9 (quoting E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025)).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran,

No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025). Accordingly, the Court finds that Petitioner is likely to demonstrate that she has a protected liberty interest in remaining out of immigration custody.

2. *Mathews* Test

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

With respect to the first factor, the Court finds that the private interest at issue is fundamental. The Ninth Circuit has recognized that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

With respect to the second factor, "'the risk of an erroneous deprivation [of liberty] is high' where, as here, '[the petitioner] has not received any bond or custody redetermination hearing.'" J.A.E.M., 2025 WL 3013377, at *7 (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)). "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." Omer G. G. v. Kaiser, No. 1:25-cv-01471-KES-SAB (HC), 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) (alteration in original) (quoting Zadvydas, 533 U.S. at 690). Petitioner's release on recognizance necessarily required a determination that she posed neither a flight risk nor a danger. Rocha Chavarria v.

Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *4 (E.D. Cal. Dec. 9, 2025) (citing 8 C.F.R. § 212.5(b); Noori v. Larose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *3 (S.D. Cal. Oct. 1, 2025)); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("The federal government sometimes releases noncitizens on bond or parole while their removal proceedings are pending. Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018). Respondents do not argue that Petitioner is now a flight risk or a danger to the community. "[A]s there have been no procedural safeguards to determine if petitioner's re-detention is justified, 'the probable value of additional procedural safeguards, i.e., a bond hearing, is high.'" Sharan S., 2025 WL 3167826, at *10 (quoting A.E., 2025 WL 1424382, at *5).

With respect to the third and final factor, "although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" J.A.E.M., 2025 WL 3013377, at *7 (citing Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe, 787 F. Supp. 3d at 1094). See Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). Courts generally have found that the cost of providing a custody hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a pre-deprivation hearing would be fiscally or administratively burdensome. See J.A.E.M., 2025 WL 3013377, at *7 ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citing Doe, 787 F. Supp. 3d at 1094)).

On balance, the Mathews factors show that Petitioner is entitled to notice and a bond hearing and "[t]hat hearing should have occurred before petitioner was re-detained." Carmen G.C. v. Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *7 (E.D. Cal. Dec. 8, 2025).

13

> "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty ...."). Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL 1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

Carmen G.C., 2025 WL 3521304, at *7.

At such a pre-deprivation hearing, the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk such that re-detention is warranted. See Martinez v. Clark, 124 F.4th 775, 784–86 (9th Cir. 2024) (confirming that the government bears the "clear-and-convincing burden of proof" at an immigration bond hearing ordered pursuant to the Due Process Clause); Carmen G.C., 2025 WL 3521304, at *7 ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove that she is a flight risk or danger to the community by clear and convincing evidence."); J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention."). "Moreover, several courts have explicitly discussed the discretionary nature of revocation of parole under § 1226, and held that despite such discretion, changed circumstances are necessary in order to revoke parole under § 1226." Tenorio Rugama v. Chestnut, No. 1:25-cv-1918 AC, 2025 WL 3707234, at *4 (E.D. Cal. Dec. 22, 2025) (collecting cases).

Based on the foregoing, Petitioner has demonstrated that she is likely to succeed in showing that she has a strong liberty interest in remaining out of custody, that the risk of

erroneous deprivation will be meaningfully reduced by requiring notice and a pre-detention hearing before a neutral decisionmaker, and that the governmental burden in providing such procedure is quite minimal.

### C. Likelihood of Suffering Irreparable Harm

"In addition to a likelihood of success on the merits, '[a] plaintiff seeking a preliminary injunction must establish . . . that he is likely to suffer irreparable harm in the absence of preliminary relief.'" Hernandez, 872 F.3d at 994 (quoting Winter, 555 U.S. at 20). In Hernandez, the Ninth Circuit found the district court did not abuse its discretion in entering an injunction that required immigration officials to consider financial circumstances and alternative conditions of release at the bond hearings of a class of noncitizens in removal proceedings who were detained pursuant to 8 U.S.C. § 1226(a). Hernandez, 872 F.3d at 981–82. With respect to the second Winter factor, the Ninth Circuit found:

> Here, Plaintiffs have established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time.
>
> "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). Thus, it follows inexorably from our conclusion that the government's current policies are likely unconstitutional—and thus that members of the plaintiff class will likely be deprived of their physical liberty unconstitutionally in the absence of the injunction—that Plaintiffs have also carried their burden as to irreparable harm.

Hernandez, 872 F.3d at 994–95. Similarly, here, the Court has concluded that Petitioner is likely to succeed on the merits of her due process claim, and thus, Petitioner has "established a likelihood of irreparable harm by virtue of the fact that [she is] likely to be unconstitutionally detained for an indeterminate period of time" in the absence of preliminary relief. Hernandez, 872 F.3d at 994. See Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) ("It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation.").

**D. Balance of Equities and the Public Interest**

To obtain a preliminary injunction, Petitioner must also demonstrate that "the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20. "When, like here, the nonmovant is the government, the last two *Winter* factors 'merge.'" Baird, 81 F.4th at 1040 (citing Nken v. Holder, 556 U.S. 418, 435 (2009); Roman v. Wolf, 977 F.3d 935, 940–41 (9th Cir. 2020) (per curiam)). "A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." Baird, 81 F.4th at 1042. "Because 'public interest concerns are implicated when a constitutional right has been violated, . . . all citizens have a stake in upholding the Constitution,' meaning 'it is always in the public interest to prevent the violation of a party's constitutional rights.'" Baird, 81 F.4th at 1042 (first quoting Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005); then quoting Riley's American Heritage Farms v. Elsasser, 32 F.4th 707, 731 (9th Cir. 2022)). "The government also 'cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.'" Baird, 81 F.4th at 1042 (quoting Zepeda v. INS, 753 F.2d 719, 727 (9th Cir. 1983)). Accordingly, the Court finds that the balance of equities tips in Petitioner's favor and that an injunction is in the public interest.

**E. Conclusion**

In sum, the Court finds that the requirements for issuing a preliminary injunction are satisfied. The Court now turns to the appropriate remedy. "The 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" Boardman v. Pac. Seafood Grp., 822 F.3d 1011, 1024 (9th Cir. 2016) (quoting Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir. 2009)). "'Status quo ante litem' refers to 'the last uncontested status which preceded the pending controversy.'" Boardman, 822 F.3d at 1024 (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)).

Courts in this district have taken differing approaches to the relief granted to petitioners who have been released, subsequently re-detained, and denied bond hearings based on the government's new interpretation of 8 U.S.C. § 1225(b). In some cases, the immediate release of the petitioner has been ordered. See, e.g., Yurani Hortua v. Chestnut, No. 1:25-cv-01670-TLN-

16

JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025) (ordering immediate release of petitioner who had been released from immigration detention on parole, was arrested for theft but the case was resolved with community service and did not result in a conviction, and was re-detained at a routine six-month check-in); Carmen G.C., 2025 WL 3521304 (ordering immediate release of petitioner who allegedly violated reporting requirements four times); Rocha Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606 (E.D. Cal. Dec. 9, 2025) (ordering immediate release of petitioner who allegedly "incurred compliance violations" that were not identified and where respondents did not suggest the alleged violations were the reason for petitioner's re-detention);

In other cases, bond hearings have been ordered rather than immediate release. See, e.g., J.E.H.G., 2025 WL 3523108 (ordering bond hearing for petitioner who allegedly violated reporting requirements numerous times and was re-detained based on said violations); Paz Aguilera, 2025 WL 3485016 (ordering bond hearing for petitioner who allegedly violated reporting requirements one time and was re-detained based on said violation); Sharan S., 2025 WL 3167826 (ordering bond hearing for petitioner who allegedly violated reporting requirements eight times).

Here, Respondents state that at Petitioner's October 2, 2025 ICE appointment, "it was determined that Petitioner had violated the ATD, and therefore she was noncompliant with her Order of Release on Recognizance and amendable [sic] to be remanded back to ICE custody." (ECF No. 9 at 3.) However, Respondents do not identify the alleged violations nor do they contend that Petitioner is a danger or flight risk based on any alleged violations. To the extent Respondents refer to the occasion on July 21, 2025 when Petitioner was two hours late with submitting her picture, Petitioner had an in-person ICE appointment later that month without issue and was not detained at that time. See E.A. T.-B., 795 F. Supp. 3d at 1324 ("That Petitioner's alleged violations occurred months before they were acted upon, and Petitioner attended multiple immigration court hearings where any violations could have been addressed but were not, undermines any suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable."). Accordingly,

the Court finds that Petitioner's immediate release is the appropriate remedy and is required to return her to the status quo ante litem.

### F. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The district court retains discretion 'as to the amount of security required, *if any*.'" Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011) (quoting Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009)). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003). "Courts regularly waive security in cases like this one," J.A.E.M., 2025 WL 3013377, at *9 (collecting cases), and given the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," Zepeda, 753 F.2d at 727, the Court finds that no security is required.

## III.

## ORDER

Accordingly, the Court HEREBY ORDERS that:

1. Petitioner's motion for temporary restraining order (ECF No. 2) is converted to a motion for preliminary injunction and it is **GRANTED**.
2. Respondents **SHALL IMMEDIATELY RELEASE** Petitioner Maikellys Luseidy Reyes Solano from custody with the same conditions she was subject to immediately prior to her detention on October 2, 2025.
3. Respondents are **ENJOINED AND RESTRAINED** from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice—describing the change of circumstances necessitating her arrest and detention—and a pre-deprivation hearing before a neutral decisionmaker. At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that

Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have counsel present.

4. The December 12, 2025 minute order (ECF No. 4) is VACATED.
5. On or before December 29, 2025, Respondents SHALL FILE a status report confirming that Petitioner has been released from custody.
6. Petitioner may file a reply brief on the merits within THIRTY (30) days of the date of service of this order.[8]

IT IS SO ORDERED.

Dated: **December 23, 2025**            /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE

---

[8] In the opposition to the motion for TRO, Respondents state: "This opposition is also submitted in response to the habeas petition. Respondents respectfully request that the petition be denied on the merits." (ECF No. 9 at 2.)

19